UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JUAN OCAMPO,
    Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC.,
et al.,
    Defendants.

No. 3:19-cv-00436 (SRU)

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Juan Ocampo ("Ocampo"), proceeding *pro se*, brought this action against Countrywide Home Loans, Inc., Bayview Loan Servicing, LLC, Bank of New York Mellon, Mortgage Electronic Registration Systems, Inc., American Home Mortgage, Nationstar Mortgage, LLC, U.S. Bank National Association, "John Does 1 through 100," and "Jane Roes 1 through 100" (collectively, "Defendants"). Defendants Countrywide Home Loans, Inc., Mortgage Electronic Registration Systems, Inc., Nationstar Mortgage, U.S. Bank National Association, Bayview Loan Servicing LLC, and Bank of New York Mellon (collectively, "the Moving Defendants") have moved to dismiss under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6). For the reasons set forth below, the motions to dismiss (doc. nos. 9, 23, 25) are **GRANTED**.

### I. Background

As alleged in the complaint, Ocampo entered into two mortgage loans on two separate properties ("the Properties"). On September 30, 2005, Ocampo executed a note and mortgage with Countrywide Home Loans, Inc., which were secured by the property located at 100 Old Kings Highway, North, Darien, CT 06820 (the "Old Kings Highway Property"). *See* Compl., Doc. 1, at ¶ 2. On May 31, 2007, Ocampo executed a note and mortgage, which were secured by the property located at 2 Geneva Road, Norwalk, CT 06850 (the "Geneva Property"). *Id*. at ¶ 3.

Ocampo principally alleges that Defendants "fraudulently misrepresented the Value of the subject property(s) and misrepresented the Loan to Fair Market Value Ratio based upon a false and inflated appraisal overstating the property value . . . ." *See id*. at ¶ 5.

Ocampo asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a) and 1964(c), on the basis of "mortgage fraud," as well as "fraud in the factum." *See id*. at ¶¶ 116–21. Along with compensation for damages and attorneys' fees, Ocampo requests "*vacatur* of final foreclosure judgments, discharge of *lis pendens*, Satisfaction of Mortgage," and cancellation of the promissory notes. *Id.* at 49. He further requests a "permanent injunction against all Defendant(s), Successors, Assigns and Agents who try to enforce a claim or judgment that has been fraudulently procured." *Id.*

Although not alleged in the complaint, I will take judicial notice of the following court proceedings, which are established by publicly-available court records.[1] On October 3, 2016, the Superior Court for the Judicial District of Stamford entered a Judgment of Strict Foreclosure on the Geneva Property. *Nationstar Mortg. LLC v. Ocampo*, 2016 Conn. Super. LEXIS 4946, at *1 (Super. Ct. Oct. 3, 2016). On June 4, 2018, the Superior Court for the Judicial District of Stamford entered a Judgment of Strict Foreclosure on the Old Kings Highway Property. *See Bank of New York Mellon f/k/a Bank of New York as Tr. v. Ocampo, et al.*, No. FSTCV146021995-S (Super. Ct. June 4, 2018).

**II. Standard of Review**

    a)    <u>Rule 12(b)(1)</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

---

[1] "At the pleading stage, courts may take judicial notice of matters of public record such as pleadings and orders in another action." *See Bailey v. Interbay Funding, LLC*, 2018 WL 1660553, at *2 n.2 (D. Conn. Apr. 4, 2018) (internal citations omitted).

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A party that moves to dismiss for lack of subject matter jurisdiction "may refer to evidence outside the pleadings." *Id.* (quoting *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

      b)      Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Plausibility at the pleading stage

is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

**III. Discussion**

    a)    <u>*Rooker-Feldman* Doctrine</u>

Under the *Rooker–Feldman* doctrine, federal district courts "lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (internal citations omitted). The prohibitions on federal district court review of state court judgments under the *Rooker–Feldman* doctrine extend to issues that are "inextricably intertwined" with such earlier state court determinations. *Rooker–Feldman* challenges may be brought by either party or *sua sponte* by the court. *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (internal citations omitted). The elements of the doctrine are as follows:

    (1)    the plaintiff lost in state court;
    (2)    the plaintiff complains of injuries caused by the state court judgment;
    (3)    the plaintiff invites district court review of that judgment; and
    (4)    the state court judgment was entered before the plaintiff's federal suit commenced.

*Vossbrinck*, 773 F.3d at 426 (internal citations and quotation marks omitted).

All four factors of the *Rooker–Feldmen* doctrine are present with respect to Ocampo's claims concerning the Old Kings Highway Property. The first and fourth elements are clearly satisfied. The Superior Court rendered an adverse judgment of foreclosure on the Old Kings Highway Property on June 4, 2018; more than nine months before Ocampo filed his current lawsuit. *See Bank of New York Mellon f/k/a Bank of New York as Tr. v. Ocampo, et al.*, No. FSTCV146021995-S, (Super. Ct. June 3, 2018); Compl., p. 49. The second element is established because Ocampo complains of injuries he suffered as a result of the state court's

judgment of foreclosure. *See, e.g., id.* ¶ 119 ("[Ocampo] has suffered injury from the duplicitous inducement of the subject properties of this Complaint from the loss of equity . . . ."). Regarding the third element, Ocampo seeks an order from the federal district court to overturn the Connecticut state court's foreclosure on both Properties. *See*, *e.g., id*. ("Wherefore [Ocampo] . . . demands judgment against the Defendant(s), and each of them, for actual, consequential, compensatory, and potential damages, together with the *vacatur* of final foreclosure judgments."). Additionally, Ocampo requests that I: (1) hold that the mortgages have been satisfied, (2) cancel the promissory notes, and (3) permanently enjoin the Defendants from attempting to enforce another claim or judgment against him. *Id*.

Similarly, all four factors are present regarding the Geneva Property. The first and fourth elements are clearly met; the final judgment of foreclosure on the Geneva Property was entered on October 3, 2016, and the instant suit was filed on March 25, 2019. *See Ocampo*, 2016 Conn. Super. LEXIS 4946, at *1; Compl., p. 49. As noted above, the second element is met because Ocampo complains of injuries that were the direct result of the state court's Judgment of Strict Foreclosure. Finally, the third element is established because Ocampo requests that I vacate the Connecticut state court's foreclosure on the Geneva Property. *See* Compl., at 49.

The Second Circuit has "consistently held that any attack on a [state court] judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 514 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016). Having "lost in the [state court] foreclosure action," Ocampo "may not now re-litigate the validity of the foreclosure in federal court." *Id.* at 517–18.

To the extent Ocampo alleges that the foreclosure judgment resulted from fraud, *Rooker-Feldman* still bars his federal claims. *See Astoria Fed. Sav. & Loan Ass'n v. Arcamone*, 2012 WL 4355550, at *2 (D. Conn. Sept. 18, 2012) ("Even where a plaintiff alleges that a state court judgment was procured by fraud, *Rooker–Feldman* will divest the federal court of jurisdiction.") (internal citations omitted). Thus, "even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." *Simpson v. Putnam County Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) (internal citations omitted).

For the foregoing reasons, Ocampo's allegations with respect to the Old Kings Highway Property and the Geneva Property are a direct invitation for me to review a final state court judgment with which he disagrees. In *Nelson v. Countrywide Home Loans, Inc.*, 2019 U.S. Dist. LEXIS 168299, at *8 (D. Conn. Sept. 30, 2019), I held that the *Rooker–Feldmen* doctrine barred me from exercising subject matter jurisdiction on facts similar to those alleged here. In accordance with my holding in *Nelson*, I hereby dismiss Ocampo's claims against the Moving Defendants regarding both subject properties for lack of subject matter jurisdiction. *See* 2019 U.S. Dist. at *8.

    b)    <u>Statute of Limitations</u>

        i.    *RICO Claims*

In this matter, the plaintiff has alleged substantive violations of two substantive RICO provisions: Sections 1964(c) and 1962(a). Compl., at ¶¶ 116–19. I need not address the merits of those claims because Ocampo's RICO claims are time-barred. RICO claims are subject to a four-year statute of limitations, *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012), and the statute of limitations "begins to run when the plaintiff discovers—or should reasonably

have discovered—the alleged injury." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008). In determining whether a plaintiff should reasonably have discovered the injury, the Second Circuit asks "whether a reasonable [person] of ordinary intelligence would have discovered the existence of the fraud." *Nino v. Countrywide Home Loans, Inc.*, 2019 WL 1320282, at *3 (D. Conn. Mar. 22, 2019), *reconsideration denied*, 2019 WL 2357565 (D. Conn. June 4, 2019) (internal citations omitted).

Ocampo argues that he "learned of the facts about the misrepresentation of the Appraisal of both Properties after doing some research about the subject matter of this complaint on December 18, 2018," and therefore brought this suit within the applicable four-year statute of limitations. Compl., at ¶¶ 38–39. A reasonable person, however, would have discovered such a misrepresentation at a considerably earlier time. *See Nino,* WL 1320282, at *3. The *Nino* court addressed analogous facts and arguments in a separate suit brought against the Moving Defendants and others. *Id*. at *3. In that case, the plaintiff asserted similar RICO and Connecticut fraud claims against the lenders on three mortgages that she executed between 2004 and 2007 for "misrepresent[ing] the value and the loan-to-fair-market-value ratio" of the Properties. *Id.* at *2. The court granted the defendants' motion to dismiss, concluding that all of the claims were time-barred. *Id*. at *3–4. In so holding, the court observed that "[a]ny manipulation of the loan-to-fair-market-value ratios of each of the Properties could and should have been discovered by a reasonably diligent purchaser of ordinary intelligence at the time the mortgages were executed." *Id.* at *3.

Like the plaintiff in *Nino*, Ocampo alleges that Defendants misrepresented the value of the Properties, as well as the Properties' loan-to-fair-market-value ratio, when his mortgages were executed. *See* Compl., at ¶ 91. Ocampo executed the mortgage for the Old Kings Highway

Property on September 30, 2005 and the mortgage for the Geneva Property on May 31, 2007. *Id*. at ¶¶ 2–3. A reasonably diligent purchaser would therefore have identified a misrepresentation of the Properties at that time. Because Ocampo filed the instant complaint on March 25, 2019, over a decade later, I conclude that his claims far-exceed the four-year statute of limitations and, thus, are time-barred.

Even under a more expansive view of when Ocampo should have discovered the injury, Ocampo's claims are still time-barred. The injury pleaded by Ocampo allegedly began with the collapse of the Housing Bubble and the resultant Mortgage Crisis. Compl., at ¶ 59. Like the plaintiff in *Nino*, Ocampo admits in his complaint that he became aware of "the Housing Bubble and its collapse" between 2005 and 2011, and of the "thousands of foreclosure cases clogging the Courts" between 2008 and 2011. *Nino*, 2019 WL 1320282, at *4; Compl., at ¶¶ 57–58. Ocampo also asserts that the "Public at Large" received "storm warnings" of lending fraud through the "Financial Crisis Inquiry Commission Report from Congress" in 2010 and through "the testimony [of] William K. Black before the House Financial Services Committee" in 2011. Compl., at ¶¶ 62, 65. As the *Nino* court concluded with respect to the plaintiff in that case, Ocampo should have become aware of any harm arising from Defendants' allegedly fraudulent conduct at the time that he became aware of the Mortgage Crisis, which would have given rise to plaintiff's alleged injury. *Nino*, 2019 WL 1320282, at *4. Accordingly, Ocampo should have discovered an injury by 2011 at the latest.

Moreover, to the extent Ocampo alleges that the continuing violations doctrine exempts his RICO claims from the statute of limitations, that argument fails because the doctrine does not apply to RICO actions. *See Nino v. Countrywide Home Loans, Inc.*, 2019 WL 2357565, at *2 (D. Conn. June 4, 2019) (internal quotation marks and citations omitted). Rather, RICO claims

are "subject to a rule of separate accrual." *Id*. (internal quotation marks and citations omitted). A plaintiff asserting a RICO cause of action "has a right to sue, even after the statute of limitations has run as to the underlying racketeering activity, when a 'new and independent injury is incurred from the same [RICO] violation.'" *Id*. (internal citations omitted). "An injury is not independent of the alleged underlying RICO violation where it is caused in material part by the original fraud." *Id.* (internal citations omitted).

In *Nino*, following the court's dismissal of the RICO claims, the plaintiff filed a motion for reconsideration and raised similar arguments to those raised by Ocampo in the instant action. *See* Nino, 2019 WL 2357565, at *1. The court denied the motion, holding that the four-year statute of limitations still applied because the plaintiff had "not alleged any injury independent of the underlying alleged RICO violation." *Id*. at *2. Here also, the injuries alleged in Ocampo's complaint do not appear distinct from the alleged underlying RICO violations – namely, the misrepresentation of the Properties' values and of the Properties' loan-to-value ratios. For those reasons, I conclude that the four-year statute of limitations applies in this case and, thus, Ocampo's RICO claims against the Moving Defendants are time-barred.

    ii.  *Fraud Claims*

Fraud claims are subject to a three-year statute of limitations in Connecticut. *See* Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."). The statute of limitations for those claims begins "with the date of the act or omission complained of." *Nino*, 2019 WL 1320282, at *4 (internal citations omitted). "Ignorance of [the plaintiff's] rights . . . will not suspend its operation." *Id*. (internal citations and alteration omitted).

Here, the mortgages were executed on September 30, 2005 and May 31, 2007. Because Ocampo filed his current complaint on March 25, 2019, he has not met the three-year statute of limitations. Ocampo argues that the continuing violations doctrine removes his fraud claims from the statute of limitations. Compl., at ¶ 91. The *Nino* court addressed the same argument under analogous circumstances and ultimately concluded, as I do here, that it was without merit.[2] In its decision denying reconsideration, the *Nino* court held that the continuing violations doctrine did not apply to the plaintiff's analogous Connecticut fraud claims because the complaint "fail[ed] to allege facts sufficient to raise an inference of a continuing course of conduct." *See Nino*, 2019 WL 2357565, at *2.

Here, like *Nino*, Ocampo's Connecticut fraud claims are grounded in Defendants' alleged misrepresentations of the value of the Properties when the mortgages were executed, as well as the failure to "provide Value to attach to [Ocampo's] Mortgage and Promissory Note." Compl., ¶¶ 72, 120. The complaint fails to allege any wrongful actions committed by Defendants after the initial execution of the mortgages in 2005 and 2007, respectively. Thus, the complaint fails to allege ongoing misconduct that would constitute a continuing course of conduct that could remove Ocampo's claims from the three-year statute of limitations for fraud.

For those reasons, I conclude that all of Ocampo's claims against the Moving Defendants – the RICO claims and the fraud claims – are time-barred.

c) <u>Anti-Injunction Act</u>

To the extent that Ocampo seeks injunctive relief against the Connecticut state court foreclosure judgments, the complaint is denied pursuant to the Anti-Injunction Act. The Anti-Injunction Act provides, "[a] court of the United States may not grant an injunction to stay

---

[2] "While section 52-577 generally bars claims brought three years after the tortious conduct occurred, '[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of

proceedings of a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Courts in the Second Circuit have repeatedly held that, absent a showing by the plaintiff that one of those exceptions applies, the Anti-Injunction Act bars federal courts from enjoining state court foreclosure and eviction proceedings. *See Markey v. Ditech Fin. LLC*, 2016 U.S. Dist. LEXIS 129511, at *12 (D. Conn. Sept. 22, 2016).

Ocampo requests a "permanent injunction against all Defendant(s), Successors, Assigns and Agents who try to enforce a claim or judgment that has been fraudulently procured . . . ." Compl., at 49. To the extent that this paragraph pertains to any state court judgment with regard to the foreclosures of the Properties, the complaint is dismissed.

        d)       <u>Failure to State a Claim</u>

Finally, Ocampo's RICO and fraud allegations with respect to both the Geneva Property and the Old Kings Highway Property fail to state a claim upon which relief can be granted. To state a valid RICO claim, a plaintiff must satisfy two burdens. First, the plaintiff "must allege that the defendant has violated the substantive RICO statute." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962). To that end, the plaintiff must first allege the following seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id*. Second, the plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." *Id.* (citing 18 U.S.C. § 1962) (alteration removed).

---

conduct is completed.'" *Nino*, 2019 WL 235765, at *2 (internal citations omitted).

Ocampo's complaint alleges violations of two substantive RICO provisions. Compl., at ¶¶ 116–21. However, the complaint does not plead those alleged violations with the requisite particularity to defeat the Defendants' Motions to Dismiss. Because Ocampo's RICO claims are grounded in fraud, they must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) ("Federal Rule of Civil Procedure 9(b) states that in averments of fraud, 'the circumstances constituting fraud . . . shall be stated with particularity.' This provision applies to RICO claims for which fraud is the predicate illegal act."). Therefore, under Rule 9(b), Ocampo must "specify the statements [he] claims were false or misleading, give particulars as to the respect in which [he] contend[s] the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* at 173. Ocampo must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (internal citations and quotation marks omitted). A complaint "full of conclusory and speculative allegations pertaining to the alleged fraudulent scheme" does not satisfy the heightened pleading standard set forth in Rule 9(b). *See Curtis v. Law Offices of Bushman*, 443 F. App'x 582, 585 (2d Cir. 2011). Finally, where "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (internal citations omitted).

Here, the complaint does not identify any particular false or misleading statements made by the original lenders, Countrywide Home Loans and American Home Mortgage. Rather, Ocampo offers only unfounded legal conclusions regarding Defendants' alleged commission of "Mortgage fraud, with the intent to defraud . . . ." Compl., at ¶ 69. Ocampo argues that Defendants "fraudulently misrepresented the Value of the subject property(s)," "misrepresented

the Loan to Fair Market Value Ratio based upon a false and inflated appraisal overstating the property value," and "engaged and benefitted from a corrupt enterprise to defraud homeowners." *See* Compl., at ¶¶ 5, 118.

Ocampo relies on the notion that the Moving Defendants misrepresented the value of the Properties at the time he signed the Loan and Mortgage documents. Compl., at ¶ 77. Ocampo's only factual support for that assertion is that the Properties were appraised at values that did not comport with the Moving Defendants' alleged representations. *Id*. at ¶¶ 78–80. However, the information in the complaint with regard to the Moving Defendants' alleged misrepresentations pertain to properties unrelated to this suit.[3] In the absence of any facts to suggest what the Moving Defendants represented the subject properties to be worth, Ocampo's allegations regarding the Properties' appraised value are of no consequence. *Id*. at ¶ 78. Therefore, even when viewing the allegations in a light most favorable to Ocampo, the complaint fails on its face.

Even if the complaint was not defective on its face, it would still fail because it does not describe who exactly misrepresented the appraisal or market values of the Properties. Further, the allegations do not give rise to a "strong inference of fraudulent intent." *Moore*, 189 F.3d at 173. Ocampo does not allege "facts and circumstances that would support an inference" that Countrywide Home Loans "knew of specific facts that were contrary to" their representations. *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004). Rather, the complaint sets forth the conclusory allegation that Defendants "knew or should have known that these representations were false." Compl., at ¶ 72. Ocampo has therefore failed to state a claim with respect to his RICO allegations. Because Ocampo uses those same facts with respect to his separate fraud

---

[3] Ocampo alleges, "Defendant(s) Original Lender 1 & 2 represented the Value of the subject property(s) . . . as $215,000.00 and $236,000 for the property's [sic] located at 444 Bedford Avenue, Stamford, CT 06901 and $900,000.00 for the property's [sic] located at 25 Alexander Street, Greenwich, CT 06831 respectively." Compl., Doc. 1, at ¶ 77.

claims, those claims are also barred for the same reasons.

Finally, Ocampo also alleges that Countrywide Home Loans and American Brokers Conduit unlawfully transferred the "equitable interests of Plaintiff's property" to others without providing Ocampo "any money to fund the fraudulently induced" loan. *Id*. at ¶¶ 95–102. Drawing all inferences in favor of Ocampo, I find that those conclusory allegations, too, fail to state claims upon which relief can be granted; they do not "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. Accordingly, all of Ocampo's counts against the Moving Defendants are dismissed for failure to state a claim.

For the foregoing reasons, all of Ocampo's counts against the Moving Defendants are dismissed.[4]

## IV. Conclusion

For the reasons stated above, the Moving Defendants' Motions to Dismiss (doc. nos. 9, 23, and 25) are **GRANTED**. The Clerk is directed to enter judgment for the Defendants and close the case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 31st day of March 2020.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[4] Because Ocampo's claims are barred for the reasons stated above, I do not discuss the Moving Defendants' remaining arguments in support of dismissal.